Dr. Jacqulyn DIGGS,
Plaintiff-Appellant,

v.

HARRIS HOSPITAL–METHODIST,
INC., Defendant–Appellee.

No. 87–1631.

United States Court of Appeals,
Fifth Circuit.

June 21, 1988.

LaNelle L. McNamara, McNamara & McNamara, Waco, Tex., for plaintiff-appellant.

William M. Schur, Tom B. Renfro, Wynn, Brown, Mack, Renfro & Thompson, Fort Worth, Tex., for defendant-appellee.

Before REAVLEY, GARWOOD and DAVIS, Circuit Judges.

REAVLEY, Circuit Judge:

Jacqulyn Diggs, a black, female physician, brought a Title VII action against the private, non-profit hospital that terminated her staff privileges. Following a bench trial, the district court denied Diggs all relief, ruling against her both on the ground that she lacked the capacity to bring suit under Title VII because she was not an employee of the defendant hospital, and on the merits. Because we find that Diggs failed to prove the existence of an employment relationship with which the hospital allegedly interfered, we affirm.

## I. *Facts and Proceeding Below*

Diggs received her M.D. degree from the University of Texas at Galveston in 1977, and completed a residency in obstetrics and gynecology at John Peter Smith Hospital, Fort Worth, Texas in 1981. She is licensed to practice medicine in Texas.

In July 1981, Diggs applied for staff privileges at Harris Hospital–Methodist, Inc. ("Harris Hospital") in Fort Worth. Staff privileges permit a physician to admit her private patients to the hospital for medical treatment and to utilize the facilities and personnel of the hospital in caring for her patients. At Harris Hospital, physicians who have staff privileges are designated as appointed to the medical staff of the hospital. Diggs was initially appointed to the temporary medical staff at Harris Hospital, and in September 1981 she was appointed to the provisional medical staff.

Diggs retained her provisional status for the ensuing three years, during which time the hospital repeatedly considered termination of her privileges due to her failure to comply with the requirement of sponsor-observation imposed on provisional staff members, and concerns over several instances of perceived case mismanagement by Diggs. Following several warnings, hearings, and reviews, the hospital terminated Diggs's staff privileges on August 28, 1984.

One year later, in August 1985, Diggs brought this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The action alleged discriminatory acts by Harris Hospital on the basis of race, sex, and/or in retaliation for a prior charge of discrimination. The district court entered judgment in July 1987 against Diggs, who now appeals.

## II. *Discussion*

Congress enacted Title VII of the Civil Rights Act of 1964 to ensure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 468, 102 S.Ct. 1883, 1890–91, 72 L.Ed.2d 262 (1982). Specifically, the Act provides in part that:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, *or otherwise to*

*discriminate against any individual* with respect to his compensation, terms, conditions, or *privileges of employment,* because of such individual's race, color, religion, sex, or national origin;

42 U.S.C. § 2000e–2(a)(1) (emphasis added).

Our court has previously held that a Title VII claim must necessarily involve an employment relationship. *Broussard v. L.H. Bossier, Inc.,* 789 F.2d 1158, 1159 (5th Cir. 1986). Further, it is well-settled in this circuit that we determine whether a plaintiff was an "employee" for Title VII purposes by applying the hybrid economic realities/common law control test first advanced in *Spirides v. Reinhardt,* 613 F.2d 826, 831 (D.C.Cir.1979). *See Broussard,* 789 F.2d at 1160;[1] *Mares v. Marsh,* 777 F.2d 1066, 1067 (5th Cir.1985). This circuit has not resolved the question of whether a person can bring a Title VII action against an employer[2] who has interfered with that person's employment opportunities with a third party.

Diggs advances two alternate theories of Title VII coverage: (1) that she was an employee of Harris Hospital, and (2) that Title VII encompasses interference by an employer with a person's access to the employment market.

### A. The Relationship Between Diggs and Harris Hospital

█ If an employee-employer relationship existed between plaintiff Diggs and defendant Harris Hospital, undoubtedly Diggs has standing to bring a claim under Title VII. Harris Hospital does not dispute that it is an employer as defined by Title VII. The question here, then, is whether Diggs's relationship with Harris Hospital was one of employee or independent contractor. While the parties agree that the economic realities/common law control test of *Spirides* is the appropriate standard, they disagree on the result of its application to the facts of this case. Harris Hospital argues that Diggs was an independent contractor, while Diggs contends that she was an employee.

We agree with the district court that Diggs was not an employee of Harris Hospital for purposes of Title VII. The economic realities/common law control test considers the economic realities of the work relationship,[3] and the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed, with emphasis on this latter control factor. *Mares,* 777 F.2d at 1067. Additionally, courts are to consider the following factors in determining whether an employee-employer relationship exists for Title VII purposes:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or

---

**1.** *Broussard,* however, misstates the name of the test when it says "we have recently held that the economic realities test identified in *Spirides v. Reinhardt* guides the analysis of whether an individual is an employee for Title VII purposes." 789 F.2d at 1160 (citations omitted). The "economic realities" test is a more expansive standard for determining employee status, and one which our court expressly declined to adopt. *Mares,* 777 F.2d at 1067–68 & n. 2. The test formulated in *Spirides* combines the economic realities test used in cases under the Fair Labor Standards Act with consideration of common law agency principles, focusing on the employer's right to control the manner and means of the worker's performance. *Id.* at 1067 & n. 2. Thus, we herein formulate the label

"economic realities/common law control test" to indicate the test promulgated by the *Spirides* court.

**2.** For the purposes of Title VII, an "employer" is basically "a person [including an entity] engaged in an industry affecting commerce who has fifteen or more employees...." 42 U.S.C. § 2000e(b).

**3.** The economic realities test applied in cases under the Fair Labor Standards Act deems persons employees "if they 'as a matter of economic reality, are dependent upon the business to which they render service.'" *Mares,* 777 F.2d at 1067 (citation omitted).

by the job; (6) the manner in which the work relationship is terminated; *i.e.*, by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer;" (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Broussard*, 789 F.2d at 1160 (quoting *Spirides*, 613 F.2d at 832).

As a matter of economic reality, Diggs, as an obstetrician-gynecologist, is dependent upon having hospital staff privileges in order to pursue her medical practice. There was no evidence submitted at trial, however, that privileges at Harris Hospital were necessary to her practice or that denial of staff privileges at Harris Hospital hampered her ability to obtain staff privileges at any other Fort Worth hospital. Furthermore, in determining her working relationship with the hospital, we are to focus more on the control factor. *Mares*, 777 F.2d at 1067. While the hospital supplies the tools, staff and equipment utilized by Diggs in delivering medical care at the hospital, and while it imposes standards upon those permitted to hold staff privileges, the hospital does not direct the manner or means by which Diggs renders medical care. Diggs is under no duty to admit any of her patients to Harris Hospital, and Harris Hospital does not pay her for her services.

Diggs treated her patients in Harris Hospital without direct supervision. As a provisional staff member she was required to have a sponsor present during surgical procedures, but the purpose of that requirement was to have someone to attest to her essential qualifications, not to direct the details of the exercise of her skill. The hospital does not provide salary or wages to physicians with staff privileges, nor does it pay their licensing fees, professional dues, insurances, taxes, or retirement benefits. Diggs had staff privileges at several other Fort Worth area hospitals during the time she was on Harris Hospital's provisional staff.

## B. Interference with Diggs's Employment Opportunities

■ Diggs also contends that even if her relationship with Harris Hospital was not one of employment, the alleged discrimination falls within the scope of Title VII because Harris Hospital's actions interfered with her employment opportunities. We reject the argument for the reason that even if we were to hold that Harris Hospital could violate the provisions of Title VII by interfering with Diggs's relationship with a third party—a question we do not reach that relationship would have to be an employment relationship under the economic realities/common law contract control test discussed above. The employment opportunities to which Diggs points were her potential treatment arrangements with private patients. Diggs was not employed, nor did she seek employment, by a professional association. She has no Title VII claim.

Title VII does prohibit discrimination "against any *individual* with respect to his ... *privileges of employment.*" 42 U.S.C. § 2000e–2(a)(1) (emphasis added). Numerous courts have found that this language encompasses all situations in which an employer subject to Title VII has discriminatorily interfered with a person's employment opportunities, either with that employer or with a third party. *Pardazi v. Cullman Medical Center*, 838 F.2d 1155, 1156 (11th Cir.1988) (where Iranian physician denied staff privileges was unable to finalize employment contract with professional corporation); *Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1021 (9th Cir. 1983) (where hospital rejected contract proposal, allegedly on racial grounds, of professional corporation under which corporation's Hispanic physician-employee would have been the director of the hospital's emergency room); *see also* Note, *The Liability of Third Parties Under Title VII*, 18 U.Mich.J.L.Ref. 167 (1984). Because Title VII is remedial and humanitarian in nature, it should be liberally construed, resolving ambiguities in favor of the complainant. *Spirides*, 613 F.2d at 831; *see also San-*

*chez v. Standard Brands, Inc.,* 431 F.2d 455, 460–61 (5th Cir.1970).

The opportunities interfered with must, however, be in the nature of *employment* relationships, as determined by application of the economic realities/common law control test adopted by our court. *See Broussard,* 789 F.2d at 1159; *Gomez,* 698 F.2d at 1021; *Beverley v. Douglas,* 591 F.Supp. 1321, 1327 (S.D.N.Y.1984) ("There must be some nexus with an employment relationship for Title VII to apply, but the connection need not necessarily be direct."). Application of a different standard in third-party situations could result in permitting recovery to an independent contractor where the discriminatory practices of the defendant interfere with the plaintiff's working relationship with another party, but denying recovery where the plaintiff's working relationship is with the defendant. The clear language of Title VII,[4] as well as the need for consistency, dictates application of one standard for determining employee status, regardless of whether the scrutinized work relationship is with the defendant or another party. A Title VII claim must involve discriminatory conduct that affects an employment relationship of the complainant, as determined by application of the economic realities/common law control test.

Under the above test, Diggs's relationship with her patients is decidedly not one of employment. Her patients did not control the manner and means of her professional treatment. A physician's work involves considerable skill. Further, patients do not furnish the equipment, instruments, supplies, and support staff used in a physician's rendition of medical care. Payment is for services rendered, not on-going compensation. Additionally, a physician provides care for numerous patients within a short period of time.

Because plaintiff has failed to establish any connection between Harris Hospital's alleged actions and an employment rela-

tionship involving Diggs, the decision of the district court is AFFIRMED.

---

4. Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges *of employment....*" 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Further, Title VII provides for enforcement of its provisions against one who engages in an "unlawful *employment* practice." 42 U.S. C. § 2000e-5 (emphasis added).