Jerry D. **DANIELS,** Plaintiff,

v.

**ALLIED ELECTRICAL CONTRACTORS INC., Mobil Oil Corporation, and Southeast Texas Safety Association,** Defendants.

No. 93–CV–283.

United States District Court,
E.D. Texas,
Beaumont Division.

March 11, 1994.

James A. Morris, Jr., Provost & Umphrey, Beaumont, TX, for Jerry D. Daniels.

Daniel Douglas Clayton, Beaumont, TX, for Allied Elec. Contractors, Inc.

James W. Hambright, Orgain Bell & Tucker, Beaumont, TX, for Mobil Oil Corp.

Roger Kelly Donaldson, Andrews Myers & Donaldson, Beaumont, TX, for Southeast Texas Safety Ass'n.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

SCHELL, District Judge.

Before this court are the Motions for Summary Judgment of the several Defendants, Plaintiff's collective reply thereto, and several other submissions by the defendants in rebuttal. Upon consideration of the parties pleadings, memoranda of law, and supporting documents, this court is of the opinion that the motions should be GRANTED IN PART and DENIED IN PART as further explained herein.

### FACTS AND BACKGROUND

During the summer of 1992, Plaintiff was employed by Defendant Allied Electrical Contractors, Inc. ("Allied") and was performing contract work at the Beaumont refinery of Defendant Mobil Oil Corporation ("Mobil"). In June of 1992, Mobil instituted a requirement that all contract employees at the Beaumont refinery be able to pass a written safety test. The test was administered by Defendant Southeast Texas Safety Association ("SETSA"), a local non-profit organization.

Plaintiff alleges that he suffers from a developmental reading and writing disorder as a result of a childhood illness, but nonetheless has accrued over 35 years' competent work experience including two-and-a-half years at the Mobil plant from which he was

eventually barred in early July, 1992. On June 15, 1992, Plaintiff failed the SETSA test, purportedly as a result of this disorder. Plaintiff further contends that his request to take an oral examination was denied.[1] Plaintiff alleges that the above-described scenario was repeated on July 17, 1992, after which time he was discharged from his employment.

Plaintiff asserts claims under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Texas Commission on Human Rights Act ("TCHRA"), Tex.Civ. Stat.Ann.Art. 5221k, § 1.01 *et seq.*,[2] and perhaps, although this is less clear, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991. A number of cross-claims have also emerged during the pendency of this action.[3] Presently, all three defendants have filed motions for summary judgment, which should be granted when there exists no genuine issue of material fact and the movant is therefore entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence of the nonmovant is to be believed, and all reasonable inferences are to be drawn in the nonmovant's favor. *Id.* at 255, 106 S.Ct. at 2514.

### AMERICANS WITH DISABILITIES ACT CLAIM

■ Although Defendants make a number of attacks upon Plaintiff's ADA claims, this court has no reason to look further than the first one presented. It is undisputed that Plaintiff did not re-take the examination at issue after he failed it for a second time on July 17, 1992, and that the ADA did not become effective until July 26, 1992. *See*

Pub.L.No. 101–336, Title I, § 108 (1990). Further, Plaintiff was barred from working at the Mobil refinery prior to July 26, 1992. Plaintiff's reply, supported by affidavit, contends only that the test's post-July 26, 1992 administration to others created a "continuing violation of The Act [that] continues to have a discriminatory impact on the Plaintiff." Plaintiff's Opp. at 2.

This court does not agree. *Cf. Waller v. Wal–Mart Stores, Inc.*, Case Number 1:93–CV–588, January 18, 1994 (Schell, J.). Both the "continuing violation" argument and the alternate contention that the ADA should be applied retroactively have been widely rejected. *See, e.g., Malek v. Martin Marietta Corp.*, 1993 WL 463451, No. 93–4018–SAC (D.Kan. Oct. 15, 1993) ("continuing violation" theory); *O'Bryant v. City of Midland*, 9 F.3d 421, 422 (5th Cir.1993) (ADA not to be applied retroactively). As Plaintiff does not allege any specific post-July 26, 1992 acts in violation of the ADA, summary judgment is granted in all Defendants' favor as regards this claim.

### CIVIL RIGHTS ACT OF 1991 CLAIM

■ Plaintiff states in his First Amended Complaint that his claims are based in part on the Civil Rights Act of 1991. However, he makes no further allegations regarding the type of discrimination covered by Title VII as amended. Nevertheless, by its terms, Title VII forbids employment practices which improperly discriminate among individuals only on account of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Reference to such discrimination is absent in Plaintiff's Complaint, his Charge of Discrimination with the Texas Commission on Human Rights,[4] and the materials submit-

---

1. For the purpose of these motions, Plaintiff's version of events as supported by his summary judgment evidence (and all reasonable inferences therefrom) must be accepted as correct; the court is therefore required at this juncture to disregard Defendants' contrary evidence that Plaintiff never informed anyone of the basis of his illiteracy.

2. In his response to the instant motions, Plaintiff has explicitly abandoned his claims for Intentional and/or Negligent Infliction of Emotional Distress. Plaintiff's Opp. at 8.

3. Leave was granted for Allied to file cross-claims against both Mobil and SETSA on September 30, 1993; leave was granted for Mobil to file a cross-claim against Allied on October 28, 1993.

4. The only box checked off is for "disability"; the others (race, color, sex, religion, national origin, retaliation, age, and "other") are not so marked.

ted in response to the instant motion. More-over, while the defendants have not submit-ted evidence which affirmatively demon-strates that the plaintiff is *not* a member of one of the classes of persons protected by § 2000e–2(a), their burden may be dis-charged merely by pointing out that there is an absence of evidence on an element of the nonmovant's case which is both essential and in regards to which the nonmovant bears the burden of persuasion. *Celotex Corp. v. Ca-trett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment for all Defendants is therefore appropriate on this claim as well.

## TCHRA CLAIM

a. Overview

■ Although the Texas Commission on Human Rights Act, former Tex.Civ.Stat.Ann. Art. 5221k, has been repealed and recodified under the Texas Labor Code, the repealing act has no effect on complaints filed with the Texas Commission on Human Rights before September 1, 1993. *See* Act of May 24, 1993, ch. 276, § 9 (73d Leg.). As Plaintiff's Charge of Discrimination was filed on No-vember 16, 1992, Article 5221k, as amended to 1992, applies to the instant claim. *Id.* Texas courts have embraced the use of more firmly-established federal civil rights prece-dent (i.e., Title VII) to aid in the interpreta-tion of the short-lived pre–1993 version of the TCHRA. *See City of Austin v. Gifford,* 824 S.W.2d 735, 739 (Tex.App.—Austin 1992) ("When reviewing a case brought pursuant to the [TCHRA], a court may look not only to the relevant provisions of the state statute, but when necessary, also to the analogous federal provisions contained in Title VII."); *cf. Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex.1991) (TCHRA's gener-al purposes "include correlation of state law with federal law in the area of discrimination in employment").

It should be noted, however, that Title VII and TCHRA cannot be read *in pari materia.*

Although Title VII precedent is used to in-terpret TCHRA, TCHRA coverage by it terms prohibits "handicap" discrimination—addressed in the federal realm not by Title VII, but by the Americans With Disabilities Act—in addition to the types of discrimina-tion (i.e., on the basis of race or gender) forbidden by Title VII. Therefore, Plaintiff's disability discrimination claim may be brought under TCHRA, which, unlike the ADA, was in effect prior to July 26, 1992.

b. Who is Plaintiff's "Employer"?

The interrelationship of Defendants Allied (Plaintiff's nominal employer), Mobil (the premises owner which contracted with Al-lied), and SETSA (the testing agency) has brought about some maneuvering by the de-fendants on the issue of who might ultimately be responsible for the alleged discrimination in the event that it is proven. Allied re-quests judgment as a matter of law because, it claims, Mobil is Plaintiff's "employer" for the purposes of this action; Mobil takes a diametrically-opposed position. SETSA, ap-parently uninterested in playing favorites in the Allied–Mobil dispute, is content merely to assert that whoever the "employer" is, it's not SETSA. Common sense suggests that this court cannot accept all three arguments.

1. Allied

A comprehensive resolution of this "em-ployer" issue will not be required, however, as regards Defendant Allied. Separately from the above contention, Allied has pro-duced competent evidence showing that the "Allied" which was Plaintiff's putative "em-ployer" in the relevant legal sense was "Al-lied Electrical Contractors of Beaumont, Inc.," a corporation formed independently of the named Defendant.[5] This evidence is ad-duced both in the affidavit of the named Defendant's Vice President, Kelly Kelley, and copies of various paychecks issued to Plaintiff for the period of June 4, 1992 to January 28, 1993.[6] Plaintiff, though placed on notice, has not produced any evidence to

5. Plaintiff's Original Complaint names "Allied Electrical Contractors, Inc." as a party-defendant in both its style and body. Plaintiff's Orig. Cmpl't at I.A.

6. These paychecks read "Allied Electrical Con-tractors of Beaumont, Inc." in two places; no mention is made of "Allied Electrical Contrac-tors, Inc."

rebut the contention that he has not sued a proper party. Summary judgment will therefore be granted as to Defendant Allied.

### 2. SETSA

■■■ The Fifth Circuit has recently summarized its now well-settled method of determining standing when a putative "employer" resists that title:

> In determining whether an employment relationship exists within the meaning of Title VII and the ADEA, we apply a "hybrid economic realities/common law control test." The right to control an employee's conduct is the most important component of this test. When examining the control component, we have focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule.
>
> The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Deal v. State Farm County Mut. Ins. Co. of Texas,* 5 F.3d 117, 119 (5th Cir.1993) (citations omitted).

This court finds that Plaintiff was not SETSA's "employee" as defined above. There is no evidence before the court that SETSA participated in any of the "economic realities" of an employment relationship such as payment of salaries or withholding of taxes. Nor can SETSA be found to have enjoyed a "right to control" Plaintiff. Although SETSA's failure to certify Plaintiff may have been a "but-for" cause of his termination, the uncontradicted affidavit of Toby McCleney, Defendant SETSA's Area Manager, states that "the examination given to [Plaintiff] was given according to guidelines established by [Mobil]." McCleney Aff. at 1.

While neither the parties nor the court have been able to locate a case directly on point, courts in similar situations have approved the common sense argument that merely administering a test or rendering an evaluation where the guidelines are established by another party does not create an "employment" relationship even if the *consequences* of that testing or evaluation affect an employment relationship.

An instructive Fifth Circuit case involved a suit by certain teachers against, *inter alia,* the State of Texas after they were terminated by a local school district for failing to pass Texas' compulsory certification exam. *Fields v. Hallsville Ind. Sch. Dist.,* 906 F.2d 1017 (5th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991). After a considered discussion of the Circuit's seminal case on this matter,[7] the court affirmed the granting of summary judgment in the State's favor with the following observations:

> The only evidence Teachers gave with respect to the control aspect of the Fifth Circuit test is the State's administration of the TECAT [certification] exam. There is no evidence in the record that the State played any role in the general hiring or firing of teachers. Nor is there evidence in the record that the State was involved in the daily supervision of Teachers. The State's role in the administration of the TECAT is wholly insufficient, standing alone, to create an inference of control under this circuit's test. Indeed, the State's role with respect to the TECAT is analogous to that of state bar administrators and other state licensing or certification agencies previously held not to be the employers of unsuccessful test takers under Title VII (or the ADEA). Because the evidence before the district court suggested no more than a licensing relationship between the State and Teachers, we conclude that the district court properly granted summary judgment to the State.

*Id.* at 1020 (citations and footnotes omitted).

If anything, the instant facts are even more strongly to Defendant SETSA's advantage in that unlike the State in *Fields,* which presumably developed the TECAT itself, SETSA did not formulate the standards by which Plaintiff was evaluated. Rather, ac-

---

7. *Mares v. Marsh,* 777 F.2d 1066 (5th Cir.1985) (establishing "hybrid" test for determining exis-    tence of employment relationship).

cording to Mr. McCleney's uncontradicted affidavit, SETSA merely followed the guidelines established by Mobil. McCleney Aff. at 1. This court concludes, therefore, that summary judgment is appropriately granted in SETSA's favor on Plaintiff's TCHRA claims insofar as SETSA was not Plaintiff's "employer". *Cf. Jennings v. Joshua Ind. Sch. Dist.*, 877 F.2d 313 (5th Cir.1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990) (defendant—independent security firm whose "drug-sniffing" dog acted in manner causing police officer to apply for and receive search warrant—neither "state actor", nor liable, in § 1983 lawsuit).

### 3. Mobil

The court turns finally to Defendant Mobil, which also seeks to avoid liability on the grounds that Allied/Beaumont, the independent contractor which provided Plaintiff's services, and not Mobil, was Plaintiff's employer.[8] It does not appear that any court has ever interpreted TCHRA as regards this precise issue, and the court will therefore turn to federal employment-discrimination law for guidance.

The parties' submissions to this court focus on Plaintiff's attempt to "directly" attain TCHRA standing—that is, by establishing that he is the "employee" of Mobil under the "hybrid economic realities/common law control test" used in this circuit. The court does not believe, however, that it is necessary to address that question.

A line of authority growing out of the well-considered opinion in *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973), has afforded some relief to persons who might otherwise be unfairly prejudiced by a strict application of the *Deal v. State Farm* definition of "employee."[9]

The plaintiff in *Sibley* was a "freelance" male private duty nurse who received his work assignments through a Nurses' Registry which served area hospitals which had patients who desired private nursing attention. Alleging that the hospital's staff was refusing to honor the Registry's referrals when he was assigned to female patients, the plaintiff brought suit under Title VII. At the District Court level summary judgment was granted *sua sponte* in Defendant's favor. *Id.* at 1339–40.

Referring to what has become known as the "interference with employment opportunities" argument, the *Sibley* court noted that:

[Title VII], in providing for the filing of complaints with EEOC and of eventual actions in the District Court, does not use the term "employee". The phrase is, rather, the "person aggrieved;" and that term can certainly be taken as comprehending individuals who do not stand in a direct employment relationship with an employer.[10] The fact that the Act purports to provide remedies for a class broader than direct employees is a strong indication that the proscriptions contemplated by [42 U.S.C. § 2000e–2(a)(1)] reach beyond the immediate employment relationship. It seems unlikely that Congress would confer

---

8. Mobil's submissions to this court also request summary judgment on the grounds that Plaintiff is not "otherwise qualified" or that it would not be possible to reasonably accommodate his disability. As these are controverted issues of fact, summary judgment is inappropriate. *See, e.g., City of Austin v. Gifford*, 824 S.W.2d 735, 740 (Tex.App.—Austin 1992) (discussing jury finding that Plaintiff "handicapped" under TCHRA standards).

9. Taken to its logical extreme, Defendant's argument that it is not Plaintiff's employer would permit a corporation to avoid Title VII-type liability even for an act as egregious as placing a "We Don't Hire Women" sign on the front gate of a project site, so long as that corporation was willing to absorb the extra expense of turning to intermediaries such as Allied/Beaumont for need-

ed male workers instead of directly employing those workers.

While some authority from other circuits appears to lean towards supporting that proposition, *see, e.g., Hayden v. La–Z–Boy Chair Co.*, 9 F.3d 617 (7th Cir.1993), *petition for cert. filed*, No. 93–1256, 62 USLW 3555 (Feb. 1, 1994) (no ADEA standing for plaintiff Hayden, sole shareholder and only full-time employee of "J. William Hayden, Inc.", to challenge defendant's failure to renew distribution agreement with "Hayden, Inc."), this court does not reach the same conclusion.

10. The administrative review provisions of TCHRA similarly refer to "a person claiming to be aggrieved by an unlawful employment practice." Tex.Civ.Stat.Ann.Art. 5221k, § 6.01(a).

standing to bring suit under the Act upon persons without rights under the Act because they are not employees.

*Id.* at 1341 (footnote omitted). As the court further noted,

> To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.

*Id.* The D.C. Circuit therefore held that, although there did not exist any employment relationship between the plaintiff nurse and the defendant hospital "in the sense of the usual indicia of such employment," *id.* at 1342, the plaintiff had standing to pursue his employment discrimination claim. "*Sibley* standing" has since realized widespread attention, though not widespread acceptance. *See Vakharia v. Swedish Covenant Hosp.,* 765 F.Supp. 461 (N.D.Ill.1991) (extensively addressing post-*Sibley* developments).

The Fifth Circuit "ha[d] not resolved the question of whether a person [could] bring a Title VII action against an employer who has interfered with that person's employment opportunities with a third party" at the time that it handed down its opinion in *Diggs v. Harris Hospital–Methodist, Inc.,* 847 F.2d 270, 272 (5th Cir.), *cert. denied,* 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988). The question remains unresolved.[11] This court, guided by the language of *Diggs,* and unconstrained by contrary authority, will confer *Sibley* standing upon the instant plaintiff.

The plaintiff in *Diggs,* a female African-American physician, had instituted a Title VII suit against a private hospital which had terminated her staff privileges. In dicta, the Fifth Circuit wrote that:

> Title VII does prohibit discrimination "against any *individual* with respect to his ... *privileges of employment.*" Numerous courts have found that this language encompasses all situations in which an em-

ployer subject to Title VII has discriminatorily interfered with a person's employment opportunities, either with that employer or with a third party. Because Title VII is remedial and humanitarian in nature, it should be liberally construed, resolving ambiguities in favor of the complainant.

> The opportunities interfered with must, however, be in the nature of *employment* relationships, as determined by application of the economic realities/common law control test adopted by our court. Application of a different standard in third-party situations could result in permitting recovery to an independent contractor where the discriminatory practices of the defendant interfere with the plaintiff's working relationship with another party, but denying recovery where the plaintiff's working relationship is with the defendant. The clear language of Title VII, as well as the need for consistency, dictates application of one standard for determining employee status, regardless of whether the scrutinized work relationship is with the defendant or another party.

*Id.* at 273–74 (emphasis in original) (citations and footnote omitted).

The question was not reached, and Dr. Diggs' suit was dismissed, because the Fifth Circuit held that Dr. Diggs' relationship with her patients did not establish an "employment relationship" as defined by the *Deal* test, and that therefore no "employment relationship" existed to be interfered with so as to create *Sibley* standing. *Id.*

The opposite result is reached on the instant facts. It can not be argued that Allied/Beaumont would not be a proper defendant in a Title VII suit if it *sua sponte* fired its female employees for the stated reason of their gender. In such a situation, the Allied/Beaumont–Plaintiff relationship would be replete with the "hybrid economic realities/common law control" factors. The Allied/Beaumont–Plaintiff relationship is therefore an "employment opportunity," and this

---

**11.** *See Diggs,* 847 F.2d at 273 ("even if we were to hold that Harris Hospital could violate the provisions of Title VII by interfering with Diggs's relationship with a third party—a question we do not reach ...").

Plaintiff attains standing for his allegation that Defendant Mobil has improperly interfered with it.

Upon consideration of the foregoing, this court concludes that Plaintiff has standing to pursue his TCHRA claim against Mobil under the principles of *Sibley* and its progeny.[12]

## CONCLUSION

As regards Plaintiff's Americans With Disabilities Act, Title VII, and "infliction of emotional distress" claims, summary judgment is GRANTED in favor of Defendants Allied Electrical Contractors, Inc., SETSA, and Mobil.

As regards Plaintiff's remaining TCHRA claims, summary judgment is GRANTED in favor of named defendant Allied and defendant SETSA. Mobil's motion for summary judgment on the TCHRA claims is DENIED.

---

**12.** For reasons similar to those outlined earlier, *see* pp. 518–19, this court is of the opinion that *Sibley* standing is not appropriate as against Defendant SETSA.