19 F.3d 1432
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gary L. CATTIN, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, a Delaware corporation, and
Electronic Data Systems Corporation, a Texas
Corporation, Defendants-Appellees.
 No. 92-2494.
 United States Court of Appeals, Sixth Circuit.
 March 22, 1994.
 
 Before: KENNEDY, MILBURN, Circuit Judges, and ALDRICH, District Judge.[1]
 PER CURIAM.
 
 
 1
 Plaintiff Gary Cattin[2] appeals the denial of his motion for supplemental relief. Plaintiff contends that the District Court erred in concluding that plaintiff voluntarily separated from employment with Electronic Data Systems ("EDS") and therefore was only entitled to the portion of the stock grant under the EDS Stock Incentive Plan. For the reasons stated below, we affirm.
 
 I.
 
 2
 In October 1984, EDS became a wholly-owned subsidiary of General Motors Corporation ("GM") and assumed responsibility for all GM data processing work. As a consequence, thousands of GM data processing employees were transferred to EDS on January 1, 1985. Plaintiff is a former employee of GM who worked in the data processing department for twenty-seven years and was transferred to EDS on January 1, 1985.[3]
 
 
 3
 Under the GM Retirement Program, employees could retire and receive benefits after thirty years of credited service. Plaintiff had planned to retire under this "thirty-and-out program" but as an employee who transferred to EDS he was not eligible to accrue additional service under the GM Retirement Plan or participate in any GM employee benefit program. Consequently, the plaintiff filed the underlying action challenging his inability to accrue additional service under the GM Retirement Program while working at EDS.
 
 
 4
 As a transferred employee, plaintiff was eligible to participate in the EDS Stock Incentive Plan. This stock plan provided transferring employees with a grant of General Motors Class E common stock ranging from 100 to 1000 shares depending on length of service with GM. Under the Stock Incentive Plan, plaintiff was entitled to purchase 870 shares at 10 cents per share. These shares were to be "earned" or vested at the rate of ten percent per year.
 
 
 5
 In February 1985, GM and EDS issued this stock. However, the Stock Purchase Agreement contained a "Buyer's Release" clause. This clause required transferred employees to release all claims against EDS and GM resulting from the transfer. Plaintiff refused to sign the release and consequently was not allowed to purchase the shares of stock. Plaintiff amended his complaint contending that he had a contractual right to participate in the stock grant without signing the release.
 
 
 6
 After trial in 1986, the District Court denied plaintiff's claim with regard to the GM thirty-and-out program. Additionally, the District Court concluded, on equitable grounds, that plaintiff should have been allowed to participate in the grant of special recognition stock without signing the release. Cattin v. General Motors Corp., 641 F.Supp. 591 (E.D.MI1986). On review, this Court affirmed the District Court's decision with regard to the retirement program and affirmed its decision with regard to the stock on other grounds. Specifically, this Court concluded that the plaintiff had a contractual right to the grant of the EDS stock option. Cattin v. General Motors, 955 F.2d 416 (6th Cir.1992).
 
 
 7
 In March 1990, GM amended its retirement program to allow employees with thirty years combined service between GM and EDS to retire under the provisions of the General Motors Retirement Program. On July 1, 1990, plaintiff, at age fifty-two, took advantage of this opportunity and retired.
 
 
 8
 On September 16, 1992, plaintiff filed a motion for supplemental relief in the District Court. Plaintiff argued he was entitled to 100% of the stock grant. The defendants argued that plaintiff was only entitled to fifty percent of the stock grant because plaintiff voluntarily left employment with EDS before the grant was fully vested and before eligibility for early retirement under the EDS Retirement Plan. The District Court denied the plaintiff's motion and this timely appeal followed.
 
 II.
 
 9
 The issues raised in this appeal are legal in nature and are reviewed de novo. Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989).
 
 III.
 
 10
 The sole issue on appeal is whether plaintiff was entitled to 100% of the stock grant upon his retirement under the GM Retirement Program or whether he was only entitled to the 50% of the stock, the amount which had vested.
 
 
 11
 Under the terms of the stock agreement, plaintiff was given the right to purchase 870 shares of stock which vested at 10 percent per year. Thus, plaintiff's stock would have fully vested in January 1995, if he continued working at EDS. However, plaintiff voluntarily separated from employment with EDS on July 1, 1990, when he was fifty-two. According to the Restricted Stock Agreement, if a participant terminates employment with EDS for any reason other than death, total disability, normal retirement, or early retirement, EDS or GM has the option to buy all of the unvested shares sold to the plaintiff at the price paid by the plaintiff, or ten cents per share.[4] Early or normal retirement means retirement under the EDS Retirement Plan. Electronic Data Systems Corporation Restricted Stock Agreement, para. 8, Defendant's Brief, Ex. A, p. 5.[5] Under the EDS Retirement Plan, the earliest retirement age is age fifty-five, and the employee's age plus years of service must equal seventy. Because plaintiff retired at age fifty-two and had only worked at EDS for a few years, he was ineligible to retire under the EDS Plan. Instead, plaintiff retired under the GM thirty-and-out retirement program. Therefore, we agree with the District Court that plaintiff voluntarily terminated his employment with EDS and either EDS or GM had the option to buy back all of plaintiff's unvested shares.
 
 
 12
 Plaintiff also argues that depriving him of the full grant of stock penalizes him for electing an early retirement option. However, the evidence illustrates that the defendants are not penalizing the plaintiff for his early retirement. Rather, the plaintiff is simply limited to his rights under the Restricted Stock Agreement. Plaintiff had the option of continuing to work at EDS until age fifty-five and retire under the EDS Retirement Plan or he could retire prior to age fifty-five from GM under the thirty-and-out provisions of the GM Retirement Plan. Plaintiff chose to retire under the latter. The benefits and detriments of each option were clearly defined prior to plaintiff's decision and the decision was solely within his power.
 
 IV.
 
 13
 Next, the plaintiff argues that statements made by then-chairman Roger Smith at 1988 and 1990 shareholder meetings indicate that the stock grant was intended to make up for lost pension benefits and therefore the stock grant falls within the purview of the Employee Retirement Income Security Act of 1975, 29 U.S.C. Sec. 1001, et seq.[6]
 
 
 14
 The District Court rejected the plaintiff's assertion ruling,
 
 
 15
 Mr. Smith's oral statements lack support in the [Restricted Stock] Agreement and are contrary to the purpose of the plan as set forth in the Prospectus.[7] Because such oral statements run afoul of the parol evidence rule, they can not be introduced into evidence and cannot be considered by this court.
 
 
 16
 We agree that the parol evidence rule bars admission of Mr. Smith's statements to vary the terms of the Restricted Stock Agreement. The Texas Supreme Court[8] has stated that "[w]hen parties have concluded a valid integrated agreement with respect to a particular subject matter, the [parol evidence] rule precludes the enforcement of inconsistent prior or contemporaneous agreements." Hubacek v. Ennis State Bank, 317 S.W.2d 30, 32 (Tex.1958). It is well-settled that written agreements are presumed to be integrated. Id. The Restricted Stock Agreement is a valid, integrated agreement which expressly states that the purpose of the stock grant is to reward transferring employees for past service and to give them a stake in the new company. See n. 7. The statements by Roger Smith lack support in the Agreement and are contrary to the plan purposes as set forth in the Prospectus. Thus, we will not consider the oral statements made by Roger Smith which were introduced to vary the terms of the Agreement.
 
 V.
 
 17
 For the reasons stated, we AFFIRM the District Court's order denying plaintiff's motion for supplemental relief.
 
 
 
 [1]
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [2]
 When this action commenced Thomas Omans was also a named plaintiff. Omans has no further claims against either GM or EDS and is not a party to this appeal
 
 
 [3]
 For a complete recitation of the events which have occurred in this case see Cattin v. General Motors Corp., 641 F.Supp. 591 (E.D.MI1986), vacated without op., 865 F.2d 257 (6th Cir.1988) and affirmed after remand, 955 F.2d 416 (6th Cir.1992)
 
 
 [4]
 Paragraph 4(f) of the Restricted Stock Agreement states "[i]f Buyer's employment with the Company is terminated prior to the close of business on the last Vesting Date for any reason other than death, Total Disability (as defined in Paragraph 8 hereof), Normal Retirement (as defined in Paragraph 8 hereof), or Early Retirement (as defined in Paragraph 8 hereof) EDS or GM shall have the option to buy for cash all of the shares of Unvested Stock sold to Buyer at the cash price paid by him."
 
 
 [5]
 Paragraph 8 of the Restricted Stock Agreement defines early retirement and normal retirement as "the discontinuance of employment of a participant in accordance with the early and normal retirement provisions, respectively, of the Electronic Data Systems Corporation Retirement Plan, as amended. In the event that at any time EDS does not have a proposed or effective Retirement Plan, such terms shall be defined by regulation of the Committee." (emphasis added)
 
 
 [6]
 On May 20, 1988, Mr. Smith stated, in response to a shareholder's question,
 when we transferred people from GM to EDS, we understood that there were differences between GM retirement benefits and EDS retirement benefits, and we calculated those very carefully and gave each transferring employe [sic] a certain amount of stock that related to that difference. Now the value of that stock, of course, has more than doubled so I think those people should be in good shape but I cannot sit here and tell you what EDS is going to do about 30 and out.
 J.App. at 75.
 On May 25, 1990, Mr. Smith again responded to a shareholder's question, stating, "I think we ought to point out that when you transferred from GM to EDS, you were given stock in a value to make up for the difference in the retirement program, is that not true?"
 J.App. at 77.
 
 
 [7]
 "Purpose of the Plan. The purpose of the Plan is to provide corporate officers and key employees of Electronic Data Systems Corporation ("EDS") and it[s] subsidiaries ... with a strong incentive for individual creativity and contribution to ensure the future growth of the Company. The Plan is not designed to benefit persons who may be satisfied solely with past accomplishments but, rather, is designed to reward those who are deeply committed to a career with the Company and whose ability and diligence permit such persons to make important contributions to the success of the Company by enabling such persons to acquire shares of Class E Common Stock, $0.10 par value
 Defendant's Brief, Ex. A, Prospectus p. 4.
 
 
 [8]
 Although the parties have assumed the application of Michigan law, the Restricted Stock Agreement and Prospectus contain choice of law provisions in which the parties selected Texas as the applicable substantive law with regard to this Agreement. Thus, we will apply Texas law. See Defendant's Brief, Ex. A, Restricted Stock Agreement at 7, Prospectus at 10