**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 97-50027.

Helen R. BLOOM, Plaintiff-Appellant,

v.

BEXAR COUNTY, TEXAS, Defendant-Appellee.

Dec. 19, 1997.

Appeal from the United States District Court for the Western District of Texas.

Before REYNALDO G. GARZA, KING and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Helen R. Bloom worked as a full time court reporter in Bexar County, Texas, for more than seven years, ending in July 1993. In 1989, Judge Andy Mireles, 73rd Judicial District Court, hired Bloom as his official court reporter. Although city and county ordinances banned smoking in the courthouse facility, Judge Mireles permitted smoking in his chambers and offices, over which the county had no control. Bloom began to experience health problems and missed work periodically over the next four years. Bloom's doctor advised her that she was suffering from multiple chemical sensitivity (including sensitivity to environmental tobacco smoke), asthma, and other related medical conditions. The doctor also advised Bloom to stop working in the courthouse building, which had poor ventilation. Bloom requested and received from the district judges a temporary transfer to the Justice Center, across the

1

street from the courthouse.

In June, 1993, Bloom applied to Judge Pat Priest, the local administrative judge, for an open position as a "swing" reporter, which involved relieving court reporters in various courts throughout the county. In her application, Bloom requested modification of the position so that she would not have to work in the old courthouse. Judge Priest informed Bloom that she was not eligible for the swing position because her medical condition would preclude her from relieving court reporters in the old courthouse. Rather than return to work in the 73rd Judicial District Court, Bloom resigned her position.

In June, 1994, after filing and losing a worker's compensation claim, Bloom filed suit in federal court, alleging that Bexar County had discriminated against her in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 (1997), and the Civil Rights Act of 1991, 42 U.S.C. § 1981 (1997). Bloom's complaint alleged that her medical conditions qualified as a disability under the ADA, thereby obligating Bexar County to accommodate her disability. Bloom alleged that Bexar County's failure to accommodate her disability and failure to enforce city and county ordinances prohibiting smoking in the courthouse constituted a constructive discharge which amounted to discrimination. Bloom's complaint sought compensatory damages and a permanent injunction requiring Bexar County to rehire her as a court reporter in the Justice Center or in a comparable position that accommodates her disability.

The federal district court denied Bexar County's first motion to dismiss or, in the alternative, for summary judgment. Following the exchange of discovery requests and the designation of witnesses, Bexar County again moved for summary judgment, arguing that Bexar County was not Bloom's employer for purposes of the ADA and, therefore, could not have discriminated against her. The district court found that Bexar County could not have discriminated against Bloom in violation of the ADA because, under Texas law, Bexar County had no authority with regard to the hiring, firing, or assigning of court reporters. The court went on to find that, at any rate, Bloom had not demonstrated a "disability" as defined in the ADA. Accordingly, the district court issued a summary judgment in favor of Bexar County.[1] That same day, the district court denied Bloom's motion for leave to amend her complaint.

*Discussion*

*A. The District Court Properly Granted Summary Judgment on Bloom's ADA Claims*

In this circuit, we review a district court's summary judgment *de novo. Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992). In this context, we view the evidence in the light most favorable to the non-movant. *Id.* Summary judgment is proper if the evidence so viewed shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c).

---

[1]Bloom does not appeal the district court's summary judgment on her § 1981 claims, which the court granted because Bloom's complaint failed to allege racial or ethnic animus as required by § 1981.

*1. Bloom's Claims Under ADA Title I*

Regardless of whether Bloom was disabled, the district court properly granted summary judgment because Bexar County was not Bloom's employer for ADA Title I purposes. ADA Title I makes it unlawful for a covered entity to discriminate against a qualified individual with a disability "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "covered entity" is an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). The statutory term "employer" means "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person...." 42 U.S.C. § 12111(5)(A).

Bexar County is not a "covered entity" with regard to Bloom because Bexar County was not Bloom's employer. In Texas, court reporters are employees of the state, rather than the county. *Gill-Massar v. Dallas County,* 781 S.W.2d 612, 617 (Tex.App.—Dallas 1989, no writ). Texas law gives the Texas Supreme Court power to make rules governing the certification and conduct of court reporters. TEX. GOV'T CODE ANN. § 52.002 (West 1997). Court reporters for the Texas district courts are subject solely to the control of the elected state district judges. *See Rheuark v. Shaw,* 628 F.2d 297, 301, 306 (5th Cir.1980) (noting that Texas district

4

judges have absolute authority over appointment of official court reporters), *cert. denied sub nom. Rheuark v. Dallas County,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981). The district judges appoint the court reporters, who hold office "at the pleasure of the court." TEX. GOV'T CODE ANN. § 52.041. A majority of district judges in Bexar County must agree to the necessity and method of hiring additional court reporters, and the presiding judge determines the assignments of any additional reporters so hired. TEX. GOV'T CODE ANN. § 52.044; *see also Rheuark,* 628 F.2d at 301, 306 (noting "district judges in Texas possess absolute discretionary power to hire as many substitute court reporters as they deem necessary ...." and "each district judge possesses absolute authority to appoint an unlimited number of substitute court reporters as need requires and to compel the county to pay their salaries and fees.") (footnotes omitted). The Texas legislature's decision to explicitly vest control of state district court reporters in state district judges rather than counties precludes a finding that Bexar County was Bloom's employer for ADA Title I purposes.

Bloom cites cases supporting the proposition that a defendant need not be the plaintiff's direct employer to be liable under ADA Title I, *see Carparts Distrib. Ctr. v. Automotive Wholesaler's Ass'n of New England, Inc.,* 37 F.3d 12, 18 (1st Cir.1994) (acknowledging the possibility that particular circumstances may arise in which Title I would apply where plaintiff is not technically defendant's employee); *United States v. State of*

5

*Illinois,* 3 A.D. Cases 1157, 1994 WL 562180, *2 (N.D.Ill.1994) ("There is no express requirement that the covered entity be an employer of the qualified individual."); however, Fifth Circuit precedent counsels against such a finding in this case. *Carparts* and *State of Illinois* rest on an analogy between ADA Title I and Title VII of the Civil Rights Act of 1964, under which some courts have considered defendants to be "employers" despite the absence of a direct employment relationship with the plaintiff.[2] *See Carparts,* 37 F.3d at 18; *State of Illinois,* 1994 WL 562180 at *3. Fifth Circuit precedent as to Title VII, however, is to the contrary; therefore, Bloom's analogy, even if accepted, would be unavailing. *See Fields v. Hallsville Indep. Sch. Dist.,* 906 F.2d 1017, 1019 (5th Cir.1990) (holding that Fifth Circuit test for

---

[2]It is worth noting here that the authority that *Carparts* and *State of Illinois* relied upon for the proposition that a defendant need not be the direct employer of the plaintiff to be liable under ADA Title I have since become questionable at best. The Seventh Circuit expressly overruled the primary Title VII case that the district court relied upon in *State of Illinois,* which the First Circuit also cited in *Carparts. See Alexander v. Rush North Shore Med. Ctr.,* 101 F.3d 487 (7th Cir.1996) (overruling *Doe v. St. Joseph's Hosp. of Fort Wayne,* 788 F.2d 411 (7th Cir.1986)), *cert. denied,* --- U.S. ----, 118 S.Ct. 54, --- L.Ed.2d ---- (1997). Additionally, the primary Title VII case that the First Circuit relied on in *Carparts* was *Sibley Mem. Hosp. v. Wilson,* 488 F.2d 1338 (D.C.Cir.1973), a D.C. Circuit case decided before the D.C. Circuit's decision in *Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir.1979). *Spirides* established the economic realities/common law control test, later adopted by this circuit, which considers the economic realities of employment, but focuses on control as the main factor for determining the existence of an employment relationship under Title VII. 613 F.2d at 831-32; *see also Mares v. Marsh,* 777 F.2d 1066, 1067-68 (5th Cir.1985) (adopting First Circuit's economic realities/common law control test). While these cases do not rule out the possibility that a plaintiff may maintain an action against a defendant who is not, technically, the plaintiff's direct employer, they do establish that the focus of any inquiry must be the element of control.

employment relationship under Title VII focuses on control over employee's conduct), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991). Under our test for determining the existence of an employment relationship in the context of a Title VII case, "the right to control an employee's conduct is the "most important factor.' " *Id.; accord., Diggs v. Harris Hospital-Methodist, Inc.* 847 F.2d 270 (5th Cir.), *cert. denied,* 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988).

Bexar County could not have discriminated against Bloom in the manner proscribed by Title I because Bexar County did not have control or authority over "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, [or] other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. As the federal district court noted below, state judges are elected officials of the State of Texas and are not agents, officials, or employees of the county. TEX. CONST. art. V, § 7. No county official has the authority to overrule the district judges with regard to the hiring, firing, or assignment of official court reporters in the state judicial system. *See Rheuark,* 628 F.2d at 301-02 (noting that county commissioners lack authority to require district judges to obtain advance clearance before hiring additional court reporters). While Bexar County may perform the ministerial task of paying the salaries of court reporters, it does so under the direction of state law. TEX. GOV'T CODE ANN. §§ 52.041, 52.054-52.057; *see also Rheuark,* 628 F.2d at 306 n. 16 ("The payment of court reporters'

7

salaries is a ministerial function...."). Additionally, the relevant district judge, and not the county, determines the amount of a court reporter's salary. TEX. GOV'T CODE ANN. §§ 52.041, 52.044, 52.051; *see also Rheuark,* 628 F.2d at 306 (noting that district judges have "absolute authority to ... compel the county to pay [court reporters'] salaries and fees.").

These same factors would preclude finding an employment relationship in the context of a Title VII employment discrimination claim. In the Fifth Circuit, we determine the existence of an employment relationship for Title VII purposes using the hybrid economic realities/common law control test. *Fields,* 906 F.2d at 1019; *Diggs,* 847 F.2d at 272. Although other factors are relevant,[3] the most important factor is "the extent of the employer's right to control the "means and manner' of the

---

[3]Although focusing mainly on the element of control, *Spirides* also considered several factors related to the "economic realities" of employment, including:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Spirides,* 613 F.2d at 832.

8

worker's performance....' " *Mares v. Marsh,* 777 F.2d 1066, 1067 (5th Cir.1985) (quoting *Spirides v. Reinhardt,* 613 F.2d 826, 831 (D.C.Cir.1979)).  Bexar County had no right to control the means and manner of Bloom's performance because the Texas legislature vested that right exclusively in the state district court. Furthermore, none of the "economic reality" factors weigh strongly in Bloom's favor, therefore, no employment relationship existed. Accordingly, the federal district court correctly granted summary judgment as to Bloom's Title I claims.

*2. Bloom's Claims Under ADA Title III*

Regardless of whether Bloom was disabled, the district court correctly granted summary judgment on Bloom's ADA Title III claims because ADA Title III expressly does not apply to public entities, including local governments.  ADA Title III makes it unlawful for "public accommodations" and private entities that provide public transportation to discriminate against individuals with disabilities in the provision of "goods, services, facilities, privileges, advantages, or accommodations."  42 U.S.C. § 12182(a). Title III defines "public accommodations" as certain "private entities," and includes a list of the types of private entities included within that definition, such as places of lodging, food and drink establishments, places of exhibition or entertainment, sales or rental establishments, service establishments, and others. 42 U.S.C. § 12181(7).  Section 12181(6) qualifies this definition by defining the term "private entity" as "any entity other than a public entity (as defined in [ADA Title II] )."  42 U.S.C. §

9

12181(6). The definition of "public entity" in ADA Title II includes "any State or local government." 42 U.S.C. § 12131(1)(A). Accordingly, the structure and language of ADA Title III expressly precludes Bloom's claims against Bexar County under that title.

Several recent holdings support the inapplicability of ADA Title III to public entities such as Bexar County. In *Sandison v. Michigan High Sch. Athletic Ass'n,* 64 F.3d 1026 (6th Cir.1995), the Sixth Circuit held that "[p]ublic school grounds and public parks are of course operated by public entities, and thus cannot constitute public accommodations under title III." 64 F.3d at 1036. In reaching this conclusion, the Sixth Circuit relied on the statutory exclusion of public entities from the definition of private entities, as well as Department of Justice regulations defining "place of public accommodation" as " "a facility, *operated by a private entity,* whose operations affect commerce and fall within at least one of the following categories'...." *Id.* (quoting 28 C.F.R. § 36.104). More recently, in the context of a claim that a public school district's refusal to administer a prescription drug to a student, the Eighth Circuit held that "[e]ntities subject to Title III include private schools, but not public ones." *DeBord v. Board of Educ.,* 126 F.3d 1102, 1106 (8th Cir.1997). In so holding, the Eighth Circuit noted "Title III of the ADA applies to private entities providing public accommodations[,] not to public entities." *Id.; accord., e.g., Rhodes v. Ohio High Sch. Athletic Ass'n,* 939 F.Supp. 584, 591 (N.D.Ohio 1996) ("[The] definitions [in 42 U.S.C. §§ 12181(6)-(7) ] have been understood to mean that a

10

place of public accommodation must be operated by a private entity."); *Kessler Inst. for Rehabilitation, Inc. v. Mayor and Council of Essex Fells,* 876 F.Supp. 641, 652 (D.N.J.1995) ("Municipalities, as well as municipal departments, instrumentalities, and agencies, are specifically excluded from the definition of "private entities' subject to [Title] III."); *Crowder v. Kitagawa,* 842 F.Supp. 1257, 1267 (D.Haw.1994) ("The definition of "private entity' in 42 U.S.C. § 12181(6) specifically excludes any public entity such as the State of Hawaii. Accordingly, neither Title III of the ADA nor its regulations concerning service animals apply to the Hawaii quarantine system."), *rev'd on other grounds,* 81 F.3d 1480 (9th Cir.1996) (reversing based on analysis of ADA Title II, rather than ADA Title III).

*B. Bloom's Motion for Leave to Amend*

This Court reviews a denial of leave to amend under an abuse of discretion standard. *Halbert v. City of Sherman,* 33 F.3d 526, 529 (5th Cir.1994). The Federal Rules of Civil Procedure provide that "leave to amend shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Although the district court should liberally allow amendments, leave to amend is not automatic. *Id.* The decision to grant or deny leave is within the sound discretion of the district court. *Id.*

The district court did not abuse its discretion in denying Bloom's motion for leave to amend. The court found that Bloom's motion merely sought to allege additional sources of her allergic

11

reaction that Bexar County allegedly was or should have been aware of. The court denied Bloom's motion on the same day that it granted summary judgment to Bexar County, and found that the proposed amendment did not state additional claims or cure the defects in Bloom's claims. We have already held that the district court properly granted summary judgment against Bloom on her ADA claims. The allegations in Bloom's proposed amendment would not change our analysis regarding summary judgment; therefore, we hold that the district court did not abuse its discretion in denying leave to amend.

## *Conclusion*

Viewing the evidence in the light most favorable to Bloom, the non-movant, we find that the district court properly granted summary judgment on Bloom's ADA claims. Bexar County's lack of control over state district court reporters precludes liability under ADA Title I because Bexar County was not Bloom's employer and because Bexar County could not have discriminated against Bloom in the manner proscribed by ADA Title I. ADA Title III does not apply to public entities; therefore, Bexar County cannot be held liable for Bloom's ADA Title III claims. Furthermore, the district court did not abuse its discretion in denying Bloom's motion for leave to amend. Accordingly, we AFFIRM the district court's summary judgment.

12