Anthony ELIE,

v.

William Earl HILTON, et al.

No. Civ.A. 99–0879.

United States District Court,
W.D. Louisiana.

Jan. 10, 2001.

Anthony Elie, Alexandria, LA, Pro se.

Albin A. Provosty, James Michael Chamblee, Provosty Sadler & deLaunay, Alexandria, LA, for Defendants.

### MEMORANDUM RULING

LITTLE, Chief Judge.

Before this court is a Motion for Summary Judgment, filed on behalf of all named defendants. Plaintiff Elie opposes the motion. Defendants argue that plaintiff's claim must be dismissed because plaintiff was not employed by any of the defendants, or by the Rapides Parish Sheriff's Office, within the meaning of Title VII. For the following reasons, this motion is DENIED.

### FACTUAL BACKGROUND

Plaintiff Anthony F. Elie ("Elie") held a reserve deputy commission, issued by the Rapides Parish Sheriff's Office (the "Sheriff's Office"), from 1989 through early 1997. This commission was revoked by Sheriff William Earl Hilton on 7 March 1997. The parties dispute the rationale for the revocation of the commission. Defendants assert that Elie's commission was revoked because he improperly discharged his firearm "in violation of departmental policy" during an incident that occurred on 24 February 1997. See Doc. No. 68 at 3. Elie, however, states that other reserve deputies in previous similar situations received different treatment by the Sheriff's Office. See Doc. No. 75 at 5.

From 17 May 1994 through 24 June 1997, Elie was employed by the Rapides Parish School Board (the "School Board") and worked as a security guard at Peabody High School. The parties agree that the February incident at the school immediately precipitated Elie's loss of commission as a reserve deputy. Defendants assert that during this same time period, the School Board and its agents attempted to terminate Elie, but were prevented from doing so after Elie contacted the Louisiana Association of Educators' Union. See Doc. No. 67 at 2. The parties agree that the School Board and its agents permitted Elie to continue working at the school under the supervision of the school principal. On 25 June 1997, following a public hearing, the School Board officially transferred Elie from the position of security guard to that of custodian, because Elie was no longer qualified for the position without a reserve deputy commission from the Sheriff's Office.

While employed as a security guard at Peabody High School, Elie was supervised by the principal and assistant principal of the school; the extent to which Elie was also supervised by the Sheriff's Office is in dispute. Elie asserts that as a reserve deputy, he was "under the direct control, supervision and subject to the policies and rules" of the Sheriff's Office, and that "[o]n occasion, his direct work performance and work times" were subject to the direction of the Sheriff's Office. See Doc. No. 75 at 2, 4. Elie has provided some evidence supporting this contention, consisting of memoranda, reports from the Sheriff's Office, and shift schedules for the Rapides Parish Sheriff's Reserve. The defendants assert that Elie was under the sole supervision of the School Board, and that the Sheriff's Office did not have the authority to direct, dictate, recommend or influence Elie's transfer from security guard to custodian. See Doc. No. 68 at 2.

In further support of his claim that a protected employment relationship existed, Elie notes that, as a reserve deputy, he worked various other jobs as "assigned to him in the form of work details" by the

Sheriff's Office, and also worked as a security guard for an apartment complex. *See* Doc. No. 75 at 4. Because each of these positions requires Elie to possess a reserve sheriff deputy commission, he is now ineligible for such employment. *See id.*

The parties agree that Elie was not compensated by the Sheriff's Office or any of the defendants, but was paid directly by the organization that hired him to provide services as a reserve deputy. Elie asserts, however, that he received certain benefits as a reserve deputy, such as, assignment of work details, use of equipment for performance of such details, "support service" for such assignments, and life insurance coverage as a law enforcement officer. *See* Doc. No. 75 at 5–6. The parties agree that Elie's transfer within the school system itself did not result in any loss of pay.

## ANALYSIS

Defendants seek relief pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" when viewed in the light most favorable to the non-moving party, indicate that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. *See id.* at 255, 106 S.Ct. at 2513. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the non-moving party must come forward, after adequate time for discovery, with "specific facts" showing a gen-uine factual issue for trial. *See* Fed. R.Civ.P. 56(e); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

Title VII of the Civil Rights Act of 1964, as amended, permits an individual to bring a cause of action against an employer who engages in unlawful discrimination. Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (2000).

In order to state a claim under Title VII for the loss of his commission, Elie must establish the existence of a protected employment relationship with the Sheriff's Office. Courts have consistently held that Title VII clearly envisions "some employment relationship in discharge cases." *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1159 (5th Cir.1986). In this circuit, courts utilize the "hybrid economic realities/common law control test" as delineated in *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir.1985) (adopting the hybrid test defined in *Spirides v. Reinhardt*, 613 F.2d 826 (D.C.Cir.1979)), in potential multiple employer situations to determine whether the requisite relationship exists. *See, e.g., Bloom v. Bexar County*, 130 F.3d 722, 725 (5th Cir.1997); *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 505 (5th Cir.1994); *Deal v. State Farm County Mut. Ins. Co.*, 5 F.3d 117, 118–19 (5th Cir.1993). The Fifth Circuit has repeatedly emphasized that the right of the employer to control the employee's conduct is the most important factor of this test. *See, e.g., Bloom*, 130 F.3d at 725–26; *Deal*, 5 F.3d at 119. In order to determine whether such control exists, various factors are examined,

including the employer's right to hire and fire the employee, to supervise the employee, and to set the employee's work schedule. The economic realities component of the test, in turn, examines additional factors, including whether the putative employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment, as well as the considerations listed in *Spirides*.[1] *See Deal*, 5 F.3d at 119.

Defendants assert that Elie's status as a reserve deputy commission is analogous to a mere licensing relationship, and is therefore outside the scope of protection of Title VII. Defendants correctly observe that mere licencing arrangements fail to create an employment relationship protected under Title VII. *See, e.g., Fields v. Hallsville*

*Indep. Sch. Dist.*, 906 F.2d 1017, 1020 (5th Cir.1990) (concluding that state teacher certification scheme failed to create protected employment relationship between plaintiff teachers and state certification authority).[2] Plaintiff wisely does not dispute this legal argument, but instead asserts that the relationship between plaintiff and the sheriff's department did comprise a protected employment relationship. Plaintiff argues that his status as a reservist, coupled with the various ways in which the sheriffs office exerted control over the exercise of his duties, created an employment relationship actionable under Title VII.[3]

Plaintiff has come forward with sufficient evidence to defeat the instant motion.[4] His affidavit, in addition to the

1. As listed in *Spirides*, the factors to be considered in addition to the right to control include:

   (1) the kind of occupation, with reference to whether the work is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

   *Spirides*, 613 F.2d at 832.

2. Defendants also point us to Louisiana case law holding that the relationship between a sheriff and reserve deputies fails to create an employer/employee relationship. *See* Doc. No. 67 at 7–8 (citing *Moore v. Blanchard*, 35 So.2d 667 (1948), *rev'd on other grounds*, 216 La. 253, 43 So.2d 599 (1949)). The applicable standard for interpreting "whether a person is 'an employee under Title VII is a question of federal law ... to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular cir-

cumstances of the case at hand.'" *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1159–60 (5th Cir.1986) (citing *Calderon v. Martin County*, 639 F.2d 271, 272–73 (5th Cir.1981)). Given the broad remedial purposes of Title VII, coupled with the multiplicity of factors to be considered under the "hybrid economic realities/common law control" test, we decline defendants' invitation to adopt such an inflexible rule.

3. Plaintiff alternatively argues that he has stated a claim under Title VII because the action of the Sheriff's Office interfered with his employment opportunities with third party employers. Because defendants moved for summary judgment only on the question of the employment relationship between plaintiff and defendants, it is not necessary for us to decide the viability of this theory. We note, however, that the Fifth Circuit apparently has not resolved the question of whether an "employer" as defined by Title VII, can be liable under Title VII for interference with a plaintiff's employment opportunities with a third party. *See Diggs v. Harris Hospital–Methodist, Inc.*, 847 F.2d 270, 272 & n. 2 (5th Cir. 1988); *Daniels v. Allied Elec. Contractors Inc.*, 847 F.Supp. 514 (E.D.Tex.1994). *See also Sibley Memorial Hosp. v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973) (holding that such a theory is viable under Title VII).

4. The instant motion was based solely on the question of whether a protected employment relationship existed between plaintiff and the Sheriff's Office. Plaintiff, proceeding pro se, is advised that the merits of his claim should

memoranda, Sheriff's Office reports, and shift schedules, when viewed in the light most favorable to the plaintiff, could lead a rational jury to conclude that the defendants exercised control over the plaintiff sufficient to create a protected employment relationship under Title VII.

## CONCLUSION

Because we conclude that there exists an issue of material fact with regard to plaintiff's employment relationship, or lack thereof, with defendants, the motion for summary judgment is DENIED.

also be supported by documentary evidence. Conclusory allegations, even when made within the confines of an affidavit, are unlikely to withstand a motion for summary judgment challenging the merits of plaintiff's claim. Such evidence might include documentary evidence and/or testimony (either in the form of affidavit or deposition) supporting his claim of differential treatment on the basis of race.