Katy HINES

v.

**GRAND CASINOS OF LOUISIANA, LLC**

No. CIV A 00–2241.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Feb. 22, 2001.

M. Lenore Feeney, Taylor Porter et al, Baton Rouge, LA, for Katy Hines, plaintiffs.

Shelly D. Dick, Victor L. Crowell, Amanda G. Clark, Forrester Jordan & Dick, Baton Rouge, LA, for Grand Casinos of Louisiana, LLC, defendants.

## MEMORANDUM RULING

LITTLE, Chief Judge.

Before this court is a Motion to Dismiss, filed on behalf of defendant Grand Casinos of Louisiana, LLC—Tunica–Biloxi ("Grand Casinos"). Plaintiff Katy Hines ("Hines") has opposed the motion. Because material outside the pleadings has been filed by both parties, the court will convert the instant motion to a motion for summary judgment under Federal Rule of Civil Procedure 56. *See* Fed.R.Civ.P. 12(b). For the following reasons, defendant's motion is DENIED.

## FACTUAL BACKGROUND

Plaintiff was hired as a security officer at the casino managed by defendant Grand Casinos, Grand Casino Avoyelles, located in Marksville, Louisiana, in May 1994. She remained employed at the casino through December 1999. Grand Casino Avoyelles is an Indian gaming enterprise

owned by the Tunica–Biloxi Indians of Louisiana ("the Tribe").[1] The Tribe contracted with Grand Casinos to obtain financing and also to have Grand Casinos manage and operate the casino. Only Grand Casinos was named as a defendant in this action.

The Tribe entered into a Management and Construction Agreement ("the Agreement") with Grand Casinos on 1 November 1991. *See* Pl.Ex. 1. According to the Agreement, Grand Casinos is responsible for (1) funding the initial construction of the casino, and (2) managing and operating the casino. With regard to the management and operation of the casino, the Agreement provides that Grand Casinos will be the manager of the casino for the purposes of managing the facility and "exclusively to develop, manage, operate and maintain the Enterprise[2]." Pl.Ex. 1 at ¶ 3.1. The Agreement further provides that "all business and affairs ... and day-to-day operation, management and maintenance of the Enterprise shall be the sole responsibility of Manager, who is hereby granted the necessary power and authority to act in order to fulfill its responsibility." Pl.Ex. 1 at ¶ 5.1. Finally, the Agreement provides that the "Manager shall be responsible for providing a security force .... Such security force shall be comprised of security officers employed directly by the Tribe, or provided under contract with a third party and the Tribe, who shall report directly to the General Manager." Pl.Ex. 1 at ¶ 5.3.

The Agreement provides that the Manager shall select the General Manager who shall be employed by the Tribe and assigned to the operation of the enterprise. Pl.Ex. 1 at ¶ 5.6.1. This provision, however, conflicts directly with Paragraph 2.8, which provides that the General Manager is employed not by the Tribe, but by the Manager, Grand Casinos. Finally, the Agreement states that the Manager shall provide the gaming casino with personnel management and "shall have the exclusive responsibility and authority to direct the selection, control and discharge of all personnel performing regular services for the Enterprise in connection with the maintenance, operation, and management of the Enterprise." Pl.Ex. 1 at ¶ 5.8.1.

Plaintiff Hines contends that during her tenure with Grand Casinos, her immediate supervisor, night manager Patrick Laborde ("Laborde"), made inappropriate sexual comments to her. Plaintiff asserts that each time she complained of Laborde's conduct, she was retaliated against in the form of more difficult assignments and ultimately demotion from her position as assistant security manager on 21 December 1999. She asserts that these assignments and the job demotion caused her medical problems, which led to her missing work and eventual termination. Hines filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After receiving a right to sue letter from the EEOC, Hines filed suit in state court. Defendant timely removed the action to this court on the basis of diversity jurisdiction.

Defendant argues that the only named defendant, Grand Casinos, was not plaintiff's employer and that plaintiff's claim against it must therefore be dismissed un-

---

**1.** The Tunica–Biloxi Indians of Louisiana is a federally recognized Native American tribe with a reservation located in Avoyelles Parish, Louisiana. The tribe owns Grand Casino Avoyelles, which is located on the Tribe's land as required by the Indian Gaming Regulatory Act. *See* 25 U.S.C. § 2703 (2000).

**2.** "Enterprise" is defined as the "commercial enterprise of the Tribe authorized to engage in (a) gaming of every variety defined as Class II Gaming by the IGRA; (b) pursuant to any Tribal–State compact with the State of Louisiana, gaming defined as Class III Gaming under the IGRA; and (3) any other lawful commercial activity allowed on the Property."

der Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Defendant also urges that plaintiff's failure to name the Tribe as a defendant mandates that the case be dismissed under Rule 12(b)(7) for failure to name an indispensable party under Rule 19 of the Federal Rules of Civil Procedure.

## ANALYSIS

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" when viewed in the light most favorable to the non-moving party, indicate that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. *See id.* at 255, 106 S.Ct. at 2513. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the non-moving party must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. *See* Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

In order to state a claim under Title VII for sex discrimination, Hines must establish the existence of a protected employment relationship with Grand Casinos. In this circuit, courts utilize the "hybrid economic realities/common law control test" as delineated in *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir.1985) (adopting the hybrid test defined in *Spirides v. Reinhardt*, 613 F.2d 826 (D.C.Cir.1979)), in potential multiple employer situations to determine whether the requisite employment relationship exists. *See, e.g., Bloom v. Bexar County*, 130 F.3d 722, 725 (5th Cir. 1997); *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 505 (5th Cir.1994); *Deal v. State Farm County Mut. Ins. Co.*, 5 F.3d 117, 118–19 (5th Cir.1993). The Fifth Circuit has repeatedly emphasized that the right of the employer to control the employee's conduct is the most important factor of this test. *See, e.g., Bloom*, 130 F.3d at 725–26; *Deal*, 5 F.3d at 119. In order to determine whether such control exists, various factors are examined, including the employer's right to hire and fire the employee, to supervise the employee, and to set the employee's work schedule. The economic realities component of the test, in turn, examines additional factors, including whether the putative employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment, as well as the considerations listed in *Spirides*.[3] *See Deal*, 5 F.3d at 119.

---

**3.** As listed in *Spirides*, the factors to be considered in addition to the right to control include:
> (1) the kind of occupation, with reference to whether the work is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupa-

tion; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or

Rule 19 of the Federal Rules of Civil Procedure provides the framework for establishing if a party is indispensable. As a preliminary matter, the court must determine whether the presence of the party is "needed for just adjudication." Fed. R.Civ.P. 19(a). If a party is indispensable, then the court considers the feasibility of joinder. The court should order joinder if feasible. If joinder is not feasible, it must determine if the case should be dismissed according to the factors listed in Rule 19(b). *See* Fed.R.Civ.P. 19(b).

*The Rule 12(b)(6) Motion*

■ Defendant contends that the Tribe, rather than Grand Casinos, is plaintiff's employer. To support this contention, it has submitted a sample paycheck issued from the Tribe's bank account. Defendant also submitted the affidavit of the Chairman of the Tunica Biloxi Indians of Louisiana, who stated that the Tribe, and not Grand Casinos, issues the paychecks to employees of Grand Casino Avoyelles. Here, plaintiff has only sued Grand Casinos. Defendant asserts that because the Tribe is plaintiff's employer, this court must dismiss plaintiff's claim for failure to state a claim.

Plaintiff responds that an examination of the Agreement between the Tribe and Grand Casinos demonstrates that Grand Casinos, and not the Tribe, was plaintiff's employer for Title VII purposes. In support of this argument, plaintiff correctly directs us to the "hybrid economic realities/common law control test" as established in *Mares v. Marsh*, 777 F.2d 1066 (5th Cir.1985). Plaintiff additionally asserts that the express language of the Agreement prevents Grand Casinos from recovering from the Tribe should any dam-ages be awarded to plaintiff. *See* Pl. Mem. at 9; Pl.Ex. 1 at ¶ 5.8.2.4.

Applying the "hybrid economic realities/common law control test," we conclude that plaintiff was an employee of Grand Casinos. While Grand Casinos argues that the Tribe paid wages to the plaintiff, it has failed to submit any documentation other than an exemplar paycheck to establish that fact. In addition, we are unable to determine whether plaintiff was required to report to the Tribe. As delineated *infra*, the Agreement between Grand Casinos and the Tribe demonstrates that Grand Casinos, as Manager, had ultimate control over plaintiff. The Manager possessed the sole and exclusive responsibility of managing and operating the gaming casino. Pl.Ex. 1 at ¶ 3.1. All business, including the day-to-day operation and management, was the sole responsibility of the Manager, who was granted the necessary power and authority to fulfill its duties. Pl.Ex. 1 at ¶ 5.1. Although the Agreement states that the security officers were to be "employed directly by the Tribe," it also provides that the officers shall report directly to the General Manager. Pl.Ex. 1 at ¶ 5.3. The Manager has the exclusive responsibility and authority to select, control and discharge all personnel, perform background checks, prepare personnel policies and procedures, including job classification systems and salary levels. Pl.Ex. 1 at ¶¶ 5.8.1, 5.8.3, 5.8.4.

It is possible that plaintiff was also an employee of the Tribe. Grand Casinos, however, has failed to establish that the Tribe has met the requirements of the "hybrid economic realities/common law control test." As discussed *infra*, the

both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties. *Spirides*, 613 F.2d at 832.

Tribe delegated the responsibilities of managing and controlling personnel to the Manager, including the selection, hiring, firing, and policies and procedures of employees. The mere fact that the Tribe may have issued plaintiff her paycheck is insufficient to establish that the Tribe was plaintiff's employer for Title VII purposes. Viewing the facts in the light most favorable to the plaintiff, we are unable to conclude that the Tribe was plaintiff's sole employer.

*The Rule 12(b)(7) Motion*

Defendant also argues that the Tribe is an indispensable party to the lawsuit. Under Federal Rule of Civil Procedure 19, if an indispensable party exists, the court must order joinder if feasible or dismiss the case. In the case of a party that is immune from suit, joinder is not feasible. *See Pit River Home & Agric. Ass'n v. United States,* 30 F.3d 1088, 1100 (9th Cir.1994). Defendant submits that we must, therefore, dismiss this case.

In support of this argument, defendant directs us to our prior ruling in *Gore v. Grand Casinos of Louisiana, LLC,* Civ. A. No. 98–1253A, slip op. (W.D.La. Sept. 29, 1998). In *Gore,* we dismissed plaintiff's tort claim against Grand Casinos of Louisiana. We reasoned that under agency law as applied to general contractors such as Grand Casinos of Louisiana, and under the terms of the Management Agreement, there was a possibility of ultimate liability for the tort resting with the Tribe. That potential liability made joinder of the Tribe necessary for proper adjudication of the claim. Because the Tribe was immune from suit as a separate sovereign nation, dismissal was required in that case.

*Gore,* however, is easily distinguished from the instant case. *Gore* addressed the potential for tort liability of the Tribe for the slip and fall of a non-employee plaintiff. In *Gore,* we applied agency principles to determine whether there existed the possibility that the Tribe employed Grand Casinos. We concluded that Grand Casinos was an independent contractor under the terms of its contract with the Tribe, and observed the general rule that a principal is liable for the torts of its independent contractor only if the contractor is performing an ultra-hazardous activity or the principal reserves the right to supervise or control the work. In that case, we concluded that the Tribe retained a sufficient indicia of control over the casino such that the Tribe was an indispensable party to the suit.

Here, the issue is whether the failure to join the Tribe, in an action for discrimination plaintiff has attributed to Grand Casinos, mandates dismissal of the case. We agree with plaintiff that implicit in Rule 19 is the requirement that the plaintiff have a viable cause of action against the party to be joined as a defendant. *See, e.g. Vieux Carre Prop. Owners v. Brown,* 875 F.2d 453, 457 (5th Cir.1989). The text of Title VII defines an "employer," and Congress clearly and unequivocally removed Indian tribes from that definition. *See* 42 U.S.C. § 2000e (2000). Even if defendant were to establish that the Tribe was plaintiff's employer, plaintiff has no claim against the Tribe under Title VII.

Defendant asserted that the Tribe is a necessary party because it was plaintiff's employer. Defendant failed, however, to establish that the Tribe, and not Grand Casinos, was plaintiff's employer for purposes of Title VII. We conclude, therefore, that the Tribe is not a necessary party. We also note that, unlike *Gore,* the express language of the Agreement prevents ultimate liability for any discrimination by Grand Casinos from resting with the Tribe. *See* Pl. Mem. at 9; Pl.Ex. 1 at ¶ 5.8.2.4.

## CONCLUSION

For the foregoing reasons, Grand Casinos' motion is DENIED.