[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs in this case are Timothy O'Boyle, James P. O'Boyle and Nan O'Boyle, father and mother individually, and James P. O'Boyle as Conservator for Timothy O'Boyle, their retarded son. They filed a six-count complaint on October 25, 2001 alleging negligence and violation of the Americans with Disabilities Act (ADA). This action has been brought against the State of Connecticut Peter H. O'Meara, Commissioner of the Department of Mental Retardation (hereinafter "DMA"), Harkness Memorial Camp (hereinafter "the Camp") and the New London County Association for Retarded Citizens (hereinafter "ARC"). The first two counts of the amended complaint are brought against the State of Connecticut and allege negligence in the first count and violation of the American with Disabilities Act (ADA) in the second. Remaining counts are brought against the New London County Association for Retarded Citizens and Harkness Memorial Camp and contain negligence, breach of ADA and contract claims.
Defendants, State of Connecticut and Peter O'Meara (hereinafter "the State defendants") have moved to strike the second count of plaintiffs' second amended complaint and its prayer for monetary damages on the ground that the plaintiffs have failed to allege facts sufficient to state a claim of discrimination under ADA for which relief can be granted, since the State is not a private entity subject to Title III of the ADA and Title II does not provide for monetary relief
The State of Connecticut is the owner of the Harkness Camp and had leased it to the ARC. The plaintiff, Timothy O'Boyle, who it is alleged, needed someone with him at all times, was a resident in the Camp for two weeks and while taking a shower, slipped and fell and injured himself. The plaintiffs allege that the State of Connecticut had made alterations CT Page 11573 in the shower, which were improperly conducted and negligently completed and this brought about the accident. They allege that the shower and shower drain were defective and caused the water to clog the drain and to overflow out of the shower onto the floor of the adjoining living room.
The plaintiffs argue that the facts in their complaint support an inference that the State was not only a lessor but engaged in a joint venture or enterprise to operate a daycare facility with a private entity and that, where the State is not the sole owner or operator of such a facility but chooses to join or merge its services with those of a private entity, it is no longer entitled by any provision in the ADA or the Attorney General's Regulations to claim exemption under Title II of the ADA on the grounds that it is not operating a place of public accommodation. Plaintiff cites two cases in support of this proposition.Johnson v. Huizenga Holdings, Inc., 963 F. Sup. 1175 (S.D. Fla. 1977) and Fiedler v. American Multi-Cinema, Inc., 871 F. Sup. 35 (D.D.C. 1994)
In the opinion of this Court neither the ADA nor the two cases cited by the plaintiff support this assertion.
Title III of the ADA states: "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." (Emphasis added). "Title III defines "public accommodation' as certain `private entities,' and includes a list of the types of private entities included with that definition. . . ." (Citations omitted; internal quotation marks omitted). Bloom v. Bexar County, Texas, 130 F.3d 722 (5th Cir. 1977). "Section 1218(6) qualifies this definition by defining the term `private entity' as "any entity other than a public entity (as defined in [ADA Title II]). 42 U.S.C. § (s) 12181(6). The definition of `public entity' in ADA Title II includes `any State or local government.'" Id.
The Title III Manual of ADA gives several illustrations which are quoted by the defendant in its brief, situations where public and private entities work together. In each illustration, however, it is made clear that the city, state, etc., as a public entity, is subject to Title II and cannot be subject to Title III. The Title III Manual goes on to explain that "[w]here public and private entities act jointly, the public entity must ensure that the relevant requirements of Title II are met; and the private entity must ensure compliance with Title III (§ 111-1.7000). CT Page 11574
The defendants' motion to strike includes not only the second count but also its corollary prayer for monetary damages. The plaintiffs in opposition allege that a prayer for relief (ad. damnum) at the end of a multi-count complaint cites all the relief available or sought under the counts presented in the complaint and is not severable so as to be subject to a motion to strike. Plaintiffs are of the opinion that the State erroneously believes that a motion to strike can selectively excise the money damages claim when it is part of the general ad. damnum appearing at the end of a multi-count complaint. The State concedes that if the plaintiffs were to prevail on their negligence counts they would be entitled to any proven monetary damages. In challenging the prayer insofar as it is made for relief on the ADA counts, the defendants rely on the language of Connecticut Practice Book § 10-39(a). The plaintiffs do not dispute that Title II of the ADA does not provide a cause of action for monetary damages. The State points out that Practice Book § 10-39
allows for a claim for relief to be stricken only if the relief sought could not be lately awarded. Accordingly, the State is asking that the Court strike the prayer for monetary relief only insofar as it applies to Count II.
The motion to strike the second count of the complaint and any monetary damages under ADA is granted.
 _____________ Hale, JTR
CT Page 11575