Dear Ms. Boutsis:
On behalf of the Village of Palmetto Bay, you have asked for my opinion on substantially the following questions:
1. Would Chapter 760, Florida Statutes, preclude the Village of Palmetto Bay from making a municipal softball field exclusively available to female athletes?
2. Would a municipal park be considered a public accommodation within the meaning of that term in section 760.08, Florida Statutes?
Initially, I must advise you that this office will not comment on either federal legislative provisions or local codes or ordinances which may deal with these subjects.[1] The discussion of your questions is limited to a consideration of the provisions of Chapter 760, Florida Statutes.
Question One
Sections 760.01-760.11 and 509.092, Florida Statutes, constitute the "Florida Civil Rights Act of 1992."[2] The Legislature has provided a statement of intent for enactment of this legislation in section 760.01(2):
"The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state."
The act is to be "construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved."[3]
Section 760.08, Florida Statutes, prohibits discrimination in "places of public accommodation" as follows:
"All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this chapter, without discrimination or segregation on the ground of race, color, national origin, sex, handicap, familial status, or religion."
"Public accommodations" are defined for purposes of the Florida Civil Rights Act to include "[a]ny motion picture theater, theater, concert hall, sports arena, stadium, or other place of exhibition or entertainment" that serves the public.[4] A municipal softball field would appear to be a "public accommodation" as a "place of exhibition or entertainment" within the scope of section 760.02(11), Florida Statutes. Violations of statutes that make it unlawful to discriminate on the basis of race, color, religion, gender, national origin, age, handicap, or marital status in the areas of education, employment, housing, or public accommodations will give rise to a cause of action for the remedies and damages described in section 760.11(5), Florida Statutes, and may be filed by the person aggrieved, the Commission on Human Relations, or the Florida Attorney General.[5]
Like Florida's Civil Rights law, the Federal Americans With Disabilities Act (ADA)[6] prohibits discrimination against persons with handicaps within "public accommodation[s]." A "public accommodation" is a facility within one of twelve designated categories. For purposes of the Americans With Disabilities Act, "public accommodation[s]" include:
"(1) places of lodging;
(2) establishments serving food or drink;
(3) places of exhibition or entertainment;
(4) places of public gathering;
(5) sales or rental establishments;
(6) service establishments;
(7) stations used for specified public transportation;
(8) places of public display or collection;
(9) places of recreation;
(10) places of education;
(11) social service center establishments; and
(12) places of exercise or recreation."[7]
While this list of categories is declared to be exhaustive by the statute, the representative examples of facilities within each category is not. Cases decided under the ADA have held that stadiums and golf courses at which sporting activities take place fall within the protections of the act.[8]
Similarly, Florida's Civil Rights law guarantees full and equal enjoyment of "the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation" to all persons without discrimination on the basis of sex. The Florida Legislature has expressed its intent that the statute is to be liberally construed. While Florida's statute does not specifically include places of exercise or recreation as does the ADA, it does include stadiums, sports arenas, and other places of exhibition or entertainment. A liberal reading of the definition of a public accommodation in section 760. 02(11), Florida Statutes, could easily include a municipal athletic field and a reading of section 760.08, Florida Statutes, that includes municipal athletic fields within the scope "public accommodations" would appear to advance and accomplish the purposes of the act.
In sum, it is my opinion that the provisions of the Florida Civil Rights Act would prohibit the Village of Palmetto Bay from making a municipal softball field exclusively available to female athletes as any such action would constitute discrimination on the basis of sex or gender in the area of public accommodation. However, this conclusion should not be read to suggest that activities like girls' softball games cannot be scheduled exclusively at a particular athletic field so long as opportunities exist for boys' teams to also schedule use of the park.
Question Two
You also ask whether a municipal park may constitute a "public accommodation" for purposes of the Florida Civil Rights Act. As discussed in my response to Question One, a municipal park may constitute a "public accommodation" as it could be seen to constitute a place of exhibition or entertainment within the scope of section 760.02(11), Florida Statutes. However, resolution of this question in a particular instance will require the municipality to make factual determinations based on the uses to which this property is put, such as whether the park is used for entertainment or exhibition, whether the park includes a sports arena or stadium, whether food may be served on park grounds, etc. This office has no authority to resolve mixed questions of law and fact and cannot provide you with a definitive response to this question that would apply to all situations.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] See Miami-Dade County Code of Ordinances, Chapter 11A "Discrimination," Article III, "Public Accommodation."
[2] See s. 760.01(1), Fla. Stat., providing the short title for the act.
[3] Section 760.01(3), Fla. Stat.
[4] Section 760.02(11)(c), Fla. Stat.
[5] Sections 760.07 and 760.11(1), Fla. Stat.
[6] 42 U.S.C.S. s. 12101 et seq.
[7] This abbreviated list may be found at Am. Jur. 2d Americans withDisabilities Act Analysis and Implications s. 632, analyzing and commenting on the provisions of 42 U.S.C.S. s. 12181(7). I would note that under the ADA "public accommodations" within the scope of the statute are limited to private entities — Title III of the ADA does not apply to public entities. See Bloom v. Bexar County, 130 F.3d 722
(U.S.C.A. 5th Cir. 1997); and 42 U.S.C.S. s. 12181(6), defining a private entity subject to the act as "any entity other than a public entity[.]"
[8] Stoutenborough v. NFL., 1994 U.S. Dist. Lexis 21279; 3 Am. Disabilities Cas. (BNA) 537 (U.S. Dist. Ct., N.D. Ohio, Eastern Div. 1994) ("it is undisputed that a stadium in which football games are played meets the statutory definition of a public accommodation.");Martin v. PGA Tour, Inc., 204 F.3d 994 (U.S. Ct. App. 9th Cir. Or., 1999) (golf course is a place of public accommodation, including both spectators' and competitors' areas during PGA tournament.